Good morning, and may it please the Court. The District Court committed legal error in holding the claim term resembling a pan-fried bacon product indefinite. Before I get to the merits, I want to address the jurisdictional issue Hormel has raised. The Court has jurisdiction over this appeal. The District Court only agreed to consider Hormel's indefiniteness motion because Hormel represented in writing it would dismiss any remaining claims that a favorable indefiniteness ruling would, quote, end the case. The District Court granted the summary judgment on June 14, or June 24. Hormel could have immediately complied and filed a Rule 41c dismissal. In all events, two days later, HIP filed its notice of appeal. At that point in time, no genuine live issue remained in the case. The formal record then shows that HIP submitted an agreed-proposed form of order on July 24, and the District Court entered final judgment on July 25. Why don't you proceed to the merits of the case? Thank you, Your Honor. Returning to the merits, the complete intrinsic record alone demonstrates that the term provides sufficient guidance to a hypothetical person of ordinary skill in the art. The specification contains a wealth of detail. The prosecution history evidences that the term pan-fried bacon has an established meaning in the art and had that at the relevant time. The opinion says nothing about the prosecution history or much of the detail in the specification. Well, let's turn to the specification then. Yes, Your Honor. It's a function, according to the specification, resembling pan-fried bacon product is a function of texture, mouthfeel, bite, appearance, or color. But it doesn't specify how to measure any of those characteristics, what level of them must be achieved, or how many of them must be met. So, am I missing something that's in the specification? Your Honor, I disagree with your premise. I don't believe that the specification says one has to focus analytically or quantitatively on the underlying organoleptic factors that together give pan-fried bacon its appearance and flavor and taste. Let me read you from the court's opinion in Appendix 29. The court says, to your expert, and then if I just handed you two pieces of bacon and I said, tell me, which one is microwave versus which one is pan-fried? You wouldn't be able to do that. You would want to know which process each was made by, right? The witness. It would be difficult from two single pieces of bacon to say this is like pan-fried and this is not like pan-fried. That, I think, Your Honor, highlights the point of disagreement. This case is not about one piece of bacon compared to another piece of bacon. The claims define an industrial-scale commercial product. We're talking about, in the event- The expert repeatedly testifies that the expert cannot tell the difference. Well, the expert was being cross-examined by the court, questioned by the court about these underlying factors. Those aren't relevant. The expert had previously offered testimony at Appendix page 8, 1018 and 1019. Paragraphs 8 through 10 of his reply declaration that said those underlying organoleptic factors really are not relevant to the inquiry of whether industrial-scale production resembles a pan-fried bacon product. Did you say 1018 to 1019? 1018, and I apologize because- That's not in the appendix. Well, what happened, Your Honor, is I noticed that after page 1014, it's still the reply declaration, the page numbers got garbled. Oh, I see. So where should I be looking? Paragraphs 8 through 10. I see. Okay, so this is marked with some kind of odd sequence of symbols, 38. It is. That didn't show up in the electronic record. So we're at page 4 of the reply declaration. That's correct. Okay. But the district court focused on the required quantified criteria for the underlying factors. That's not what the patent disclosed. Let me point out- Well, I guess the problem, if you walk away from the organoleptic factors and you say that those really aren't determinative, then how would I know that a particular piece of bacon is enough like pan-fried bacon in order to- that my device that produced that piece of bacon would infringe? Well, that would be the wrong comparison, Your Honor. Again, the claim- Well, you agree that having pan-fried bacon is a substantive limitation of the claim, right? Resembling a pan-fried bacon product is a substantive- So how would I know that a particular piece of bacon or a group of pieces of bacon produced by my machine resemble pan-fried bacon? Here's how. First of all, we're talking about bacon slices that are input to a spiral oven at a rate of about 2.7 tons per hour. So we're not pulling one. We're talking about more of an oven. Suppose there is either one piece of bacon or a thousand pieces of bacon. I still have to decide, this really is enough like pan-fried bacon that I'm infringing or not. How do I make that determination? So, several ways. First, the intrinsic record shows that pan-fried bacon is a term of art. Second, the- What does it mean? Well, it has, as the district court- Other than bacon, which is fried in a pan. And we had that discussion before the district court. What the district court said as his ruling is if it's not indefinite, I construe that to have plain and ordinary meaning and nothing more. That's in Appendix A-1925-1926. But to continue, the example- What the example does is it provides a point of comparison between bacon made- being made at 2.7 tons per hour against bacon that is pan-fried at 500 degrees for 2.5 minutes. And then the example says they are substantially the same. That is a point of comparison that a person of ordinary skill in the art would have in addition to understanding that the phrase pan-fried bacon is a term of art in the industry. If bacon is pan-fried at 500 degrees, I strip it. Does it matter how often it's termed? I suspect, Your Honor, the answer is it might matter not in a material way. It might- Whether you leave it two and a half minutes on one side or the other or you flip it every minute, there might be an infinitesimal difference. Not a difference that a person of ordinary skill in the art would consider- Is there something in the record that tells us that? There is not on either side. Because what the record shows is the example which says the bacon is going to be pan-fried at 500 degrees Fahrenheit two and a half minutes on one side two and a half minutes on the other. So that's what the record shows. And then the record says and if you compare that compare those products to what you've been making in the example at 2.7 tons per hour you are going to find they are substantially the same. But you're not limiting yourself as I understand your position at least before the district court was you're not limiting yourself to example one. You don't say that example one is the definition of pan-fried bacon for purposes of this patent. That's absolutely correct. It's a data point. It is a precise comparison other But not a restricting comparison. But not a restrictive comparison. Let me talk about some other comparisons. The summary of the invention column two lines 23 to 28 and 32 to 34 talks about the range of colors that a product can have but then it also says that the produced product does not have burned or blackened outer edges and is much closer than a microwaved product to a home fried bacon. What this teaches a person of ordinary skill is a three way qualitative comparison and it also teaches the boundary that the inventive pan-fried bacon cannot have burned or blackened edges and the one other Let me ask you a question. This is what's bothering me about this case. I'll lay it out for you. You and I are probably old enough I suspect to remember paint by numbers You remember those games where you would color in the particular portions of the drawing and it would sure enough turn out to look kind of like a painting? Indeed. Suppose I come up with an improvement on paint by numbers and I say if you follow this you will produce a painting that looks like the Mona Lisa and then I get a patent on that and one of the terms is it has to look like the Mona Lisa. Now how in the world am I going to be able to enforce that patent for definiteness if no one really knows how close it has to be to the Mona Lisa? I have a data point the Mona Lisa itself but I don't know how far away from the Mona Lisa you can go and still infringe. That's my problem. Why is this case different from mine? This case is different because again in addition to the one example we the bacon that we would be comparing is only compared if it meets claim limitations A through E. In other words, in order to be subject to the test of resembling a pan fried bacon product you first have to follow all the steps and then you decide you have the example you have a pan fried bacon as a term of art, you have the qualitative comparison and summary of the invention and again a person of ordinary school in the art would be able to understand within the range of flexibility we have under current law whether it resembles and no one challenged resembling as being vague the question was whether pan fried bacon has meaning and to me the scope of resembling pan fried bacon product is very similar to the kind of cases this court deals with substantially or similar and so there's quite a few data points let me also say there's no question if one looks at the Hormel extrinsic evidence and the color photos Hormel has been marketing and showing comparisons and using the phrase pan fried bacon and showing pictures the reality is that a person of ordinary skill in the art would well understand with the comparisons that are available what resembles a pan fried bacon product after it's gone through the steps of process claims A through E and what doesn't. You're willing to your rebuttal so I'll leave you for the other side. Thank you your honor. May it please the court I'd like to address two primary points. Well I want to start with this. Certainly. You seem to argue lack of finality. Yes your honor. And in its reply H.I.P. points to a letter from April 11th 2019 at appendix 1133. Yes. In which I assume this is Hormel is it not? It is your honor. To bring the case to finality defendants agree that if the court expedites consideration on the indefinite issues and grants judgment in validity counterclaim and H.I.P.'s claims defendants will dismiss the remaining inequitable conduct and correction of inventorship counterclaims and so on. Doesn't that wrap up the case? Your honor it certainly did not wrap up the case at the time and it's explicit here your honor and that's I think the point is the parties understood even back as far as April of 2019 that if the court issued an opinion finding the claims indefinite then that is a partial summary judgment and we agreed that if the court did that we would then take steps to dismiss our claims so that final judgment could be entered. So even as early back as April of 2011 the parties understood that what the court was going to do. And you did that of course you dismissed. It took a while it took a month and in fact what happened your honor How is this different than our case in EPAS which we followed in subsequent cases where the district court grants summary judgment of some of the claims, there's an appeal and then the district court dismisses the remaining counterclaims and enters judgment and we hold premature notice of appeal when the judgment was entered and cured any defect. I think the difference between EPAS and this case your honor, is in EPAS what the court did is it terminated the entire case, provided an appeal deadline so everyone had a reasonable belief that the case was over and it was that judgment that was appealed from. In this case. But who had any doubt that the case was effectively over in this case given that you had agreed to dismiss, the judge understood that and the other party assumed that it would happen The other party in fact, after this happened, the partial summary judgment was entered the appeal was immediately taken and it was immediately taken for a reason your honor, it wasn't because we don't have, as Firstier points out, an inexperienced plaintiff with inexperienced trial counsel they have very experienced trial counsel and it wasn't a decision the appeal wasn't filed because they thought it was final, the appeal was expedite this appeal because there's a parallel PCAP proceeding going on so they wanted, and they in fact did try to stay that appeal so what they were doing was saying, let's crank this through as quick as we can so you made a representation yes, and and you followed up on it and the week after they actually filed the appeal, within a week, we sent them a communication saying that's not a final order we need to work through and see if we can agree on a stipulation it's at, I'll tell you your honor, 13, it's at the back it's at appendix 2335 and if you'll see on appendix 2335 towards the bottom of that, I say Jerry, thanks for the letter go on, we wanted to raise another issue with you we suspect the current appeal may be premature as the case was not final and no final judgment was entered so basically and then we provided them with a proposal, we spent almost a month having to negotiate that proposal because one of the other elements that the court didn't deal with was the infringement element how exactly was infringement gone how could it come back, so we spent almost a month before we got the final judgment so the idea is even if they thought it was a final judgment when they filed it which I don't believe they did clearly within that month after we were negotiating all this, the court entered the final judgment we asked them to and so the court had jurisdictional rules and the jurisdictional rules say that you have to appeal from a final judgment and rule 4A2 as your honor states that rule 4A2 can save a premature appeal only when a district court announces a decision that would be appealable if immediately followed by entry of judgment there's no way that partial summary judge of ruling, absent of certification under rule 34 was a final judgment that could have been appealed everyone knew it both before and after they had the final judgment in their hand they had experience counsel they chose not to slow the appeal down by filing a new appeal thank you your honor your honor this was actually a great case for having an evidentiary hearing because what we learned from that evidentiary hearing and I think what you recognize today is despite the fact we're standing before you today I certainly don't know and I expect no one knows what the standard is for an expert to apply to determine whether Pan, Fred, Bacon it really doesn't matter because the expert indicated he didn't know exactly and that's what the good thing was when the judge finally got to ask his own questions of the experts and their own expert couldn't find it. Our experts certainly explained that it is purely a subjective term and while in this case is really on all fours with the datamized case because what you had in both of those cases where you had some parameters laid out in the past but you had no way to define whether or not those parameters were met and so just like datamized this purely subjective term had no objective standard either within the patent which both experts admit the plaintiff's expert admits that there's no objective standard laid out for those terms and there's nothing in the art their own expert admitted that even in the art there's no objective standard with regard to Hormel's own use of the term their expert was asked how does Hormel apply it? He couldn't give a standard for Hormel's use either because there is no standard because this is purely subjective. Let me ask you a question which is a little bit out of the set of issues that the parties have addressed but when I first read the claim it struck me that the resembling of pan-fried product sounded like preamble type language rather than substantive limitation type language. Now both parties have agreed that it is a substantive requirement is that because without that language being a substantive limitation there would be invalidity problems with this claim? Well I think that's there certainly are invalidity problems with the claim regardless of that issue your honor. What I'm trying to get at is because if that language is not a substantive limitation of the claim then the problem goes away. The problem is indefiniteness, right? If that original order was different we wouldn't have addressed gone on to address the indefiniteness issue. Right, but what I'm saying is that you would agree with me I think that in many circumstances someone would be arguing that that language is really preamble language and not limiting and that the limiting language shows up in A, B, C, D, and E of the claim, right? Well I can't attest to what people strategically would argue. If you were in that position as a patent lawyer and you looked at this and you said oh boy, if we have to deal with pan fried bacon as a claim limitation we're going to have a problem and therefore it looks like a preamble type limitation. That's a judgment that you might well reach, don't you think? I guess I can't speculate that on you. I think the point is I know from the record that this was added during prosecution to overcome prior art. Am I mistaken about that? The limitation while it was added during prosecution, that's correct. It did not overcome the prior art. They continue to give projections. But the intent, you think, was to overcome prior art. Again, I can't speculate on the intent. I think the key here is regardless of that  We all agree that it is a limitation. It's water under the bridge, Your Honor. I don't think this court either has the jurisdiction given the scope of the notice of appeal or should even if it had jurisdiction address that because that's a separate issue. That order was never appealed. Only this order was. I think the other point, unless you have any further questions on that issue, I'll go back to the indefiniteness issue. I think the other point I just raised in response to my friend is that with regard to the example as he noted, as you questioned, the example at its best presents one data point. He admits it doesn't provide the contours of the claim. Just as in datamized, you can have an example. Unless, especially with purely subjective terms, unless you have something to bound that with substantial evidence like the cases that have found that the terms were not indefinite within the specifications themselves. There's sufficient data, many examples provided that help guide one of ordinary skill in the art. I think you're being generous when you say at its best, but I'm just puzzled why you want to send this back down to the district court. I don't want to send it back down to the district court, Your Honor. You said it's prematurely appealed. Your argument, I take it, is that the appeal has been waived altogether. Correct, Your Honor. We would ask that this appeal be dismissed and the case be final. We're not in any way asking that it be returned to the district court. And, in fact, believe we would just be right back up here. With a 54B certification. Well, but I think the point is the case is over. And there was no appeal from that judgment, so we don't think that any remand is available. They couldn't go back and appeal. But, regardless, Your Honor, if you're inclined to address the merits of this case, we certainly understand that. We think we are very strong on the merits. Let me ask one more question along the lines of Judge Rollins' question. You mentioned earlier, with respect to the dismissal issue, that there was some complexity to be worked through with respect to the proposed order of dismissal. Yes. And I'm looking at the proposed order of dismissal and entry of judgment, and two of the three paragraphs are simply saying judgment is entered against the plaintiff because of the indefinite. The other paragraph simply says defendant's first counterclaim for inequitable conduct and third counterclaim for correction of inventorship are dismissed pursuant to the terms of the letter of the court. That doesn't sound very complicated to me. You're just doing exactly what you said you would do in the April letter. Why did that take a month? Well, Your Honor, because that last paragraph is exactly that. What was it that we actually agreed to do in that letter? And we went back and forth on how that was to be interpreted in terms of if there was a remand, for example, exactly what claims we continued to have. And so we negotiated that, and that's where you got a simple result in the end, which was we said in our April letter what we said and basically left the decision of how that was going to be interpreted in terms of how any claims that were dismissed came back in the case. Your Honor, I think in conclusion the other point that we haven't talked about, but obviously this court is extremely well aware of this, is not only did the court get it right, but we are here under a standard of review and based on the court's decision, it's first-hand look at testimony, it's credibility determinations of the witnesses, that we're here not just to say, well, was the court right or was the court wrong, but we're here to say did the court clearly err in coming to its conclusions? Well, in indefiniteness it's sort of like the Teva principle, right? It's a question of law for the court, which is apply the legal standard and only if there are factual issues that are attendant to that determination, does the clear error standard apply, right? That's right, Your Honor. So that would apply, for example, to the assessment of the experts' credibility type decisions, but it strikes me not much else in the case has the clear error standard, right? But the majority of this case because there is no objective standard within the four corners, the majority of the case is about evaluating what each of the experts believed was the state of the art. In fact, Hip's own counsel stated that this isn't the typical case where you can just sort of on the four corners of the patent decide whether there's an indefiniteness issue. And it's important particularly here to have expert testimony. That's Appendix 1893 to 95. And so this court went out of its way to have a full day testimonial hearing in order to understand these experts not just on paper, but in writing. And he made those credibility determinations, and Your Honor, you're correct, that if you look at his credibility determinations and you look at those for clear error, you look at what he decided based on that testimony. Did he clearly come to the wrong factual conclusions of what the state of the art is? And then the question is, which you can look at, DeNovo, based on those findings, did the district court properly conclude? Thank you. Unless the court has any further questions. Very briefly, Your Honors. I asked the court to take a look at Appendix page 64, docket entry 142, and what the district court entered their order granting motion for summary judgment had been valid. Then in all capital letters, case closed. That was June 24, 2019. Very much like the Pendle case. What entry is that? It's 142 on Appendix 64. You know, I'm sure, that normally those words, case closed, are put in by the clerk, not by the judge. I do understand that, Your Honor, but that's the record that we had to work with, and it's consistent with how the court, the district court understood it at the time. Judge Bryson, you'd asked a question about standard of review in the line of demarcation, and what I would suggest is that Teva and Sonics drew a nuanced line that separates the kind of extrinsic evidence where the judge talked about underlying factual questions, but the judge erred, as a matter of law, in relying on conclusory allegations, and the judge's own findings on ultimate issues, objective, subjective, are entitled to no deference at all. I do submit that the record, when it's fairly reviewed, has a comparison, has guidance from the two embodiments in the specification, has qualitative comparisons in the summary. The inventive process is much closer, to use its language, to hand-fried bacon than to microwave bacon, and a person of ordinary skill in the art would understand this that's shown by Hormel's own extrinsic records. Does the court have any questions? No, thank you.